UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JHON RODRIGUEZ ORELLANA

                *Petitioner*,

        - against-

LaDeon FRANCIS, *in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement*; Todd LYONS, *in his official capacity as Acting Director of Immigration and Customs Enforcement*; Kristi NOEM, *in her official capacity as Secretary of Homeland Security*; Pam BONDI, *in her official capacity as Attorney General*,

                *Respondents*.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-04212 (OEM)

ORELIA E. MERCHANT, United States District Judge:

Petitioner Jhon Rodriguez Orellana ("Petitioner") brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE"). *See* Petition for Writ of Habeas Corpus ("Petition"), ECF 1. Specifically, Petitioner contends that on June 20, 2025, ICE unlawfully detained him at a Manhattan immigration court. Petitioner challenges his detention as a violation of the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the Administrative Procedure Act ("APA"), and the Immigration and Nationality Act ("INA") and its implementing regulations. Petitioner seeks immediate release from custody, declaratory relief, injunctive relief, reasonable attorney's fees and costs, and any other relief this Court deems just and proper.[1] *Id.* at 21-22. For the following reasons, Petitioner's Petition for a Writ of Habeas Corpus is granted.

---

[1] On August 1, 2025, the Court granted Petitioner's request for an order directing Respondents to show cause why the writ of habeas corpus should not be granted and setting a hearing on the petition.

1

## BACKGROUND

Petitioner is a citizen of Ecuador who has been living in the United States since December 18, 2024. *Id.* at 5; Exhibit A to Petition - Declaration of Marilyn Riofrio Bermeo ("Riofrio Bermeo Decl."), ECF 1-1 ¶ 3. Petitioner and his partner, Marilyn Riofrio Bermeo ("Bermeo"), fled Ecuador following an attack on their home, which was "bombarded with an explosive and bullets." *Id.* ¶ 4.

On December 18, 2024, Petitioner and his partner entered the United States through a port of entry in Brownsville, Texas, after successfully applying to enter the country through a parole program called Customs & Border Protection One, or "CBP One." Riofrio Bermeo Decl. ¶ 3; Respondents' Memorandum in Opposition ("Respondents' Opp."), ECF 9 at 1. The couple used the CBP One application "to submit certain information in advance, attest that they, a spouse or child accompanying them, meet specific vulnerability criteria, and schedule an appointment to present themselves for inspection at a participating [port of entry in Texas]." *See id.*; Petition at 5; Exhibit C to Petition - CBP One Fact Sheet, ECF 1-3. Petitioner and his partner were granted permission to lawfully enter the United States on a temporary basis and given humanitarian parole under 8 U.S.C. § 1182(d)(5).[2] Petition at 5. Because Petitioner and his partner were deemed "alien[s] who entered the United States without inspection or admission without proper documentation, U.S. Customs and Border Protection ('CBP') opted at that time to place [them] in removal proceedings under 8 U.S.C. § 1229a and [pursuant to its discretion under 8 U.S.C. § 1182(d)(5)] to release [them] temporarily[,]" Respondents' Opp. at 1, Petitioner's

---

[2] "Humanitarian Parole is granted to a foreign national (who is otherwise inadmissible) to temporarily enter the United States due to an emergency and urgent humanitarian reason or significant public benefit." https://www.help.cbp.gov/s/article/Article1321?language=en_US.

"parole was initially set to expire in December 2026." Respondents' August 14, 2025 Second Supplemental Letter ("Respondents' Second Supp. Letter"), ECF 14 at 2.

In the subsequent months, while their immigration cases were pending, Petitioner and his partner lived in New York before moving to New Jersey. Riofrio Bermeo Decl. ¶ 2. Petitioner and his partner attended removal proceedings at a Manhattan immigration court in New York. Meanwhile, the couple sought legal assistance regarding their asylum claim. *Id.* ¶ 4.

Respondents contend that Petitioner's parole was terminated on April 18, 2025, and "that there w[as] some indication that he has been notified of this termination in April 2025." Respondents' Second Supp. Letter at 1. More specifically, Respondents point to a declaration prepared by Director, Enforcement Programs Division (EPD), Admissibility and Passenger Programs (APP), Office of Field Operation (OFO), U.S. Customs and Border Protection (CBP), Department of Homeland Security who stated that "On April 11, 2025, CBP issued Petitioner a Notice of Termination of Parole advising Petitioner that it was exercising its discretion and terminating his parole in seven days." Declaration of Michael Charles ("Charles Decl."), ECF 15-1.

However, Respondents have not produced the email Petitioner was purportedly sent, and Respondents do not assert any additional information about the form, nature, or content of the notice. Rather, in support of their contention that Petitioner received notice that his parole would be revoked on April 18, 2025, Respondents submit a Notice of Termination of Intent to Revoke Employment Authorization that is addressed to Petitioner dated April 30, 2025, Exhibit B to Respondents' August 13, 2025 First Supplemental Letter ("Respondents' First Supp. Letter"), ECF 12, and a Notice of Revocation of Parole-Based Employment Authorization addressed to Petitioner dated May 14, 2025, Exhibit C to Respondents' First Supp. Letter.

3

On June 20, 2025, Petitioner and his partner attended an immigration court hearing in Manhattan. Riofrio Bermeo Decl. ¶ 6. During the hearing, an attorney for the government moved to dismiss Petitioner's case and the Immigration Judge granted the motion. *Id.* ¶¶ 6-7. As Petitioner exited the hearing, ICE officers arrested him. *Id.* ¶¶ 7-8.

After various facility transfers throughout the country, Petitioner was moved to the Metropolitan Detention Center in Brooklyn, New York. Petition at 2. On July 30, 2025, Petitioner filed the instant petition for a writ of habeas corpus in this District, alleging *inter alia* that ICE arrested and detained him in violation of the Fifth and Fourth Amendments to the Constitution, the APA, and the INA. *See id.* at 16-20.

On August 1, 2025, the Court issued an order to show cause. ECF 4. On August 4, 2025, Respondents sought, and the Court granted on consent, an extension of time for Respondents to file their response. ECF 7. That same day, the Court scheduled a hearing for August 13, 2025. On August 12, 2025, Respondents filed their response, asserting that Petitioner's parole was not revoked, but was automatically terminated on April 18, 2025. *See* Respondents' Opp. On August 13, 2025, Petitioner filed a letter and attached exhibit again asserting that, contrary to Respondents' position, Petitioner's Parole Authorization was in fact set to terminate on December 17, 2026. *See* Letter re Petitioner's Parole Authorization ("Petitioner's August 13, 2025 Letter"), ECF 10. Later on August 13, 2025, just minutes before the previously-scheduled Order to Show Cause Hearing, Respondents filed a motion seeking to adjourn the conference to further investigate the allegations in Petitioner's August 13, 2025 Letter and the attached exhibit. *See* Motion to Adjourn Conference, ECF 11. The Court converted the scheduled hearing into a conference wherein Respondents reiterated their request to file a supplemental response to Petitioner's August 13, 2025 Letter and Petitioner opposed. The Court granted Respondents' request, giving them until August

4

13, 2025 at 5:00 p.m. to file a supplemental response, gave Petitioner until August 14, 2025 at 10:00 a.m. to file a reply to Respondents' supplemental response, and set argument on the merits for August 14, 2025 at 2:00 p.m. *See* Minute Entry dated 08/13/2025; Respondents' First Supp. Letter; Petitioner's Reply in Support, ECF 13.

On August 14, 2025, mere minutes before the scheduled argument, Respondents filed a second supplemental letter without leave of Court. *See* Respondents' Second Supp. Letter. That letter withdrew numerous factual assertions, including that Petitioner's parole was automatically terminated, and conceded that Respondents revoked Petitioner's parole on April 18, 2025. *Id.*

On August 14, 2025 at 2:00 p.m., the Court held the Order to Show Cause hearing. The Court closed the record at the end of the hearing. Following the close of the record, Respondents filed a letter and supplemental declaration. Respondents' August 15, 2025 Third Supplemental Letter, ECF 15; Charles Decl.

## DISCUSSION

Petitioner argues, *inter alia*,[3] that the government's decision to revoke Petitioner's parole without meaningful notice violated the APA. Petition at 18. The Court agrees.

### A. The Court's Jurisdiction to Review Petition

Respondents argue that the Court lacks jurisdiction to review Petitioner's assertions that his parole was wrongfully revoked because such claims are subject to a jurisdictional bar under

---

[3] Petitioner asserts nine causes of action and argues that: (1) Petitioner's arrest and detention, without an opportunity to contest his detention before a neutral adjudicator, after he had been living and working in the United States, violates the Due Process Clause of the Fifth Amendment, Petition at 15-17; (2) Respondents' decision to revoke his parole without adequate process also violates the Fifth Amendment Due Process Clause, *id.* at 17; (3) Respondents' failure to provide meaningful notice prior to revoking Petitioner's parole violates the APA and its regulations, *id.* at 18; (4) Respondents' attempt to simultaneously subject Petitioner to expedited removal while his ordinary removal appeal remains pending before the BIA violates Petitioner's procedural due process rights under the Fifth Amendment, (5) Respondents' dismissal of Petitioner's removal proceedings violated the INA and its implementing regulations, *id.* at 19; (6) Respondents' application of 8 U.S.C. § 1125(b)(1) to Jhon after he received parole exceeds the government's statutory authority, in violation of the INA and APA, *id.* at 19-20; (7) Respondents' failure to provide Petitioner with an opportunity to challenge his placement in expedited removal proceedings based on his parole status violates the

5

8 U.S.C. § 1252(a)(2)(B)(ii). Respondents' Opp. at 9. Respondents argue that the decision to terminate Petitioner's parole is within the Secretary's discretion under the Parole Statute, 8 U.S.C. § 1182(d)(5)(A)—and therefore is subject to § 1252(a)(2)(B)(ii)'s jurisdictional bar. That provision strips courts of jurisdiction to review "any [ ] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii).

Even assuming *arguendo* that the decision to revoke parole was firmly within the Attorney General's discretion,[4] the Second Circuit has made clear that § 1252(a)(2)(B)(ii) "strips jurisdiction over a substantive discretionary decision, [it] does not strip jurisdiction over procedural challenges." *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015). As in *Mantena*, here Petitioner contends that Respondents violated their own regulations by failing to provide due process. "Regardless of whether the substantive revocation decision is shielded from judicial review, no party has provided authority to suggest that the *procedure* surrounding the substantive decision is

---

Due Process Clause of the Fifth Amendment, *id.* at 20; (8) Respondents lacked reliable information of changed or exigent circumstances that would justify arresting Petitioner after federal immigration authorities had already determined Petitioner could pursue his claims for immigration relief without being detained, therefore his arrest was in violation of the Fourth Amendment, *id.*; (9) Petitioner's extraordinary circumstances warrant his immediate release pending adjudication of the instant petition, *id.* at 21.

Because of the Court's decision on Petitioner's APA claim, the Court does not reach Plaintiff's other claims asserting statutory and constitutional violations. Additionally, Petitioner's ninth claim, for release pending adjudication of his habeas petition, is moot in light of the Court's grant of his writ and immediate release.

[4] The Second Circuit has recently reaffirmed that "§ 1252(a)(2)(B)(ii)'s bar on jurisdiction applies only to those decisions where Congress has expressly 'set out the Attorney General's discretionary authority in the statute.'" *Ozturk v. Hyde*, 136 F.4th 382, 395 (2d Cir. 2025) (quoting *Kucana v. Holder*, 558 U.S. 233, 247 (2010)). Relying in part on *Kucana v. Holder*, the district court in *Y-Z-L-H v. Bostock* concluded that § 1252(a)(2)(B)(ii) did not bar jurisdiction because the Parole Statute was not entirely discretionary: it required that the Secretary make an individualized determination that the specific purposes of parole had been served. 3:25-CV-965 (SI), 2025 WL 1898025, at *6 (D. Or. July 9, 2025). That requirement, it reasoned, meant that "such a decision is not within the discretion granted by the parole statute," *id.* at *7, and thus did "not preclude this District Court from reviewing whether the decision to terminate Petitioner's parole was lawful," *id.* at *8.

similarly shielded." *Id.* Agency actions that must comply with mandatory procedures are "'not within the discretion of the Attorney General,' so the INA's jurisdiction stripping provision does not apply." *Id.* at 729 (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 86 (2d Cir. 2008)); *see You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 460, 457 (S.D.N.Y. 2018) (finding that "§ 1252(a)(2)(B) does not eliminate review of legal errors" and noting that "courts can review 'how' Respondents exercise their discretion is, therefore, an uncontroversial proposition.").

Accordingly, the Court finds that § 1252(a)(2)(B)(ii) does not preclude the Court from reviewing the lawfulness of the revocation of Petitioner's parole. *See Mata Velasquez v. Kurzdorfer*, 25-CV-493-LJV, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025) (finding 1252(a)(2)(B)(ii) did not strip jurisdiction to review due process rights for parole revocation).

**B.  Whether ICE's Detention of Petitioner Violates the APA**

Petitioner argues that Respondents' decision to revoke Petitioner's parole, which was set to expire in December 2026, was without adequate process and in violation of the APA and the Due Process Clause of the Constitution. Petition at 17-18. Further, Petitioner contends that Respondents' own regulations require "meaningful notice[,]" which he argues he did not receive. Petition at 18. Respondents contend that they provided sufficient notice to Petitioner.

**1.  Legal Standards Under the APA**

Under the APA, a court must "hold unlawful and set aside agency action . . . found to be— arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2). An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not

7

be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Under that standard, [courts] defer to an agency's determinations so long as the agency 'gives adequate reasons for its decisions, in the form of a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Nat. Res. Def. Council, Inc. v. United States Env't Prot. Agency*, 961 F.3d 160, 170 (2d Cir. 2020) (cleaned up).

**2. Failure to Meet Statutory and Regulatory Standards**

Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). After parole has been granted, the Secretary may only revoke parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." *Id.* Several courts have found that, as in the case of grants of parole, *see Jean v. Nelson*, 472 U.S. 846, 853 (1985), Section 1182 requires an individualized case-by-case determination before parole can lawfully be revoked, *see Doe v. Noem*, 778 F. Supp. 3d 311, 330 (D. Mass. 2025) (holding that, by failing to make an individualized determination to revoke parole, agency's action was arbitrary and capricious); *Y-Z-L-H*, 2025 WL 1898025, at *12 (revocation of parole was unlawful where there was "no evidence, let alone any opinion or finding" that the purpose of petitioner's parole had been served at the time of the purported termination); *Mata Velasquez*, 2025 WL 1953796, at *11 ("a decision to revoke parole 'must attend to the reasons an individual [noncitizen] received parole.'"); *cf Doe v. Noem*, 25-1384, 2025 WL 1505688, at *1 (1st Cir. May 5, 2025) (statute suggests that parole may only be terminated on case-by-case basis which "cuts against a finding that en masse termination is immune to judicial review."). The Court is persuaded by this line of cases.

Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5) until December 17, 2026. Respondents' Second Supp. Letter at 3. The purpose of Petitioner's parole was so that he could apply for asylum without being removed. Since entering the United States, Petitioner was in the process of seeking assistance on his asylum claim, did not miss an immigration court date, and received a work authorization pursuant to his grant of parole. Petition ¶ 16.

Respondents do not argue that the purpose of parole was satisfied and they do not contend that they engaged in an individualized analysis to determine whether the purpose of Petitioner's parole had been accomplished. *See generally* Realtime Draft Oral Argument Transcript ("OA Tr."); Respondents' Opp. Instead, Respondents assert that "a generalized reason of terminating parole for those who have not fulfilled the purposes of their parole, [ ] applies to [Petitioner]." OA Tr. at 18. Respondents also do not argue that an authorized official concluded that humanitarian reasons and the public benefit no longer warranted Petitioner's presence in the United States. According to a DHS Directive, "if an asylum-seeker establishes her identity and that she presents neither a flight risk nor a danger to the public, her detention 'is not in the public interest,' and thus ICE 'should, absent additional factors . . . parole the alien.'" *Y-Z-L-H*, 2025 WL 1898025, at *13 (citing *Mons v. McAleenan*, 2019 WL 4225322, at *2 (D.D.C. Sept. 5, 2019)).

Because Respondents fail to argue and offer evidence that an authorized official found Petitioner to be a flight risk or a danger to the public, or that an authorized official found that humanitarian reasons do not warrant Petitioner's presence in the United States, Respondents have not shown that they complied with the requirements of 8 U.S.C. § 1182. In *Y-Z-L-H v. Bostock*, a nearly factually identical case, even where respondents produced the email sent to the petitioner the court held that respondents' determination failed to comply with the statutory requirements because it "was silent as to any finding that Petitioner's parole had served its purpose, that

humanitarian reasons do not warrant Petitioner's presence in the country, or that he is a danger to the public or a flight risk (meaning that the public interest does not warrant his presence in the country)." 2025 WL 1898025, at *13. Likewise, the district court in *Mata Velasquez v. Kurzdorfer* found that "the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole 'must attend to the reasons an individual [non-citizen] received parole.'" 2025 WL 1953796, at *11. Where the petitioner received a summary letter informing him of the revocation, "there [was] no indication that—as required by the statute and regulations—an official with authority made a determination specific to" the petitioner and therefore the petitioner's rights were violated under the Parole Statute. *Id.*

These cases mirror the factual record here. When asked the reason for the revocation of Petitioner's parole, Respondents conceded that there was only "a generalized reason" for terminating his parole. OA Tr. at 16. They maintain that they were not obligated to provide an individualized determination.

> So our position is that 1182(b)(5) – or (d)(5) and its inherently discretionary nature does not require CBP to articulate a parolee's specific individualized reason. It's in the discretion of the Secretary to determine the reason for termination of parole. There's no requirement that an individualized reason be given along with the notice.

*Id*. But this is not the law. Respondents have admittedly failed, as the statute requires, to make a "case-by-case" determination as to the revocation of Petitioner's parole. *Cf. Jean v. Nelson*, 472 U.S. at 853 (affirming en banc decision that INS official must "consider aliens for parole individually" and remanding for the District Court to "ensure that INS had exercised its broad discretion in an individualized and non discriminatory manner."). Thus, Respondents acted

arbitrarily and capriciously, in violation of the APA, when they denied Petitioner the required procedure before revoking his parole.

Furthermore, Respondents have failed to provide credible, direct evidence demonstrating that Petitioner received notice, let alone *adequate* notice. Beyond a line in a declaration stating that Petitioner received an email—without specifying the precise contents of the email or attaching a copy of the email—Respondents have proffered nothing to support their position. This failure is especially acute because the Court granted Respondents' adjournment requests for the express purpose of investigating the key issue of notice, and is further concerning in view of Respondents' repeated, haphazard efforts to clarify whether and how Petitioner's parole was revoked. *See* Respondents' Opp.; Declaration of Graham S. Dudley, ECF 14 at 6; Charles Decl.

"It is a familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990). This rule is also known as the "*Accardi* principle" after the case it stems from, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). *See Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) (citing *Accardi*, 347 U.S. at 268) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); *Singh v. DOJ*, 461 F.3d 290, 296 (2d Cir. 2006) (observing that, at least since *Accardi*, "the Supreme Court has held that an administrative agency must adhere to its own regulations").

When agencies fail to abide by their own regulations, "the APA (as developed by case law) gives aggrieved parties a cause of action to enforce compliance." *Fed. Defs. of N.Y.*, 954 F.3d at 130. Here, 8 C.F.R. § 235.3(b)(6) outlines the process that DHS itself asserts it must follow when it revokes a particular person's parole. That regulation provides that a noncitizen shall be "given

a reasonable opportunity to establish to the satisfaction of the examining immigration officer that he or she was admitted or paroled into the United States . . . [and] be allowed to present evidence or provide sufficient information to support the claim." 8 C.F.R. § 235.3(b)(6). No such opportunity was provided here. Thus, by denying Petitioner the required procedure before purporting to terminate his parole, Respondents acted arbitrarily and capriciously and violated the APA. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

Respondents represented to the Court that, because petitioner no longer had parole status, ICE lawfully detained him pursuant to 8 U.S.C. § 1225(b)(2). Respondents' Second Supp. Letter at 3; OA Tr. at 7-9. However, by failing to lawfully revoke that parole, Respondents lacked the authority to arrest Petitioner. *Cf Mata Velasquez*, 2025 WL 1953796, at *17 (holding ICE's detention of petitioner was unlawful where agency failed to provide reasoned explanation for revocation of parole).

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus, ECF 1, is GRANTED based on Petitioner's APA claim (Count Three), and Respondents are ORDERED to immediately release Petitioner from custody. By August 20, 2025, Respondents shall certify compliance with this Order by a filing on the docket. The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order and close this case.

Dated: Brooklyn, New York
      August 19, 2025

                                                         /s/
                                        ORELIA E. MERCHANT
                                        United States District Judge