UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JHON RODRIGUEZ ORELLANA

                Petitioner,

          - against-

LaDeon FRANCIS, *in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement*; Todd LYONS, *in his official capacity as Acting Director of Immigration and Customs Enforcement*; Kristi NOEM, *in her official capacity as Secretary of Homeland Security*; Pam BONDI, *in her official capacity as Attorney General*,

                Respondents.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-04212 (OEM)

ORELIA E. MERCHANT, United States District Judge:

      Petitioner Jhon Rodriguez Orellana ("Petitioner") brought this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE"). *See* Petition for Writ of Habeas Corpus ("Pet."), ECF 1. The Court issued a Memorandum and Order dated August 19, 2025, finding that Petitioner's detention violated the Administrative Procedure Act ("APA") and ordering respondents LaDeon Francis, Todd Lyons, Kristi Noem, and Pam Bondi (collectively, "Respondents") to release Petitioner from custody. Memorandum and Order ("Order"), ECF 16.

      Before the Court is Respondents' fully briefed motion for reconsideration.[1] For the following reasons, Respondents' motion is granted for the limited purpose of correcting an erroneous citation, *see* Order at 11-12, and denied in all other respects.

---

[1] Notice of Respondents' Motion, ECF 19; Respondents' Memorandum of Law ("Resps.' Recon. Mem."), ECF 19-1; Petitioner's Response in Opposition ("Pet.'s Recon. Opp."), ECF 21; and Respondents' Reply ("Resps.' Recon. Reply"), ECF 23.

1

## BACKGROUND

The Court assumes the parties' familiarity with the facts as detailed in the previous submissions and as set forth in the Order. *See generally* Order.

## LEGAL STANDARD

To succeed on a motion for reconsideration, the movant must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (citations omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, 758 F. App'x 97, 101 (2d Cir. 2018) (alteration in original) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). Nor is it "an opportunity for a [party] to . . . present arguments that could have been made before the judgment was entered." *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Reconsideration of a court's previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (citations omitted), *aff'd sub nom. Tenney v. Credit Suisse First Bos. Corp., Inc.*, 05-CV-3430, 05-CV-4759, & 05-CV-4760, 2006 WL 1423785, at *1 (2d Cir. 2006). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

**DISCUSSION**

Respondents argue that reconsideration is warranted because the Court erred in finding subject matter jurisdiction to review the Petition, incorrectly applied regulatory requirements, relied upon "incorrectly decided cases," improperly addressed Petitioner's APA claim, incorrectly found a protected liberty interest, and ordered an inapposite remedy. *See generally* Resps.' Recon. Mem.

The Court's prior ruling was issued under an expedited timeframe and against the backdrop of evolving facts—in part due to Respondents' vacillating positions and presentment of the record evidence. *See* 28 U.S.C. § 2243 (requiring that the court "summarily hear and determine the facts, and dispose of the matter as law and justice require"). Given that context, the Court addressed only those arguments it found material and dispositive; arguments not expressly discussed were deemed unpersuasive and did not warrant further analysis. *See Miller v. Metro. Life Ins. Co.*, 17-CV-7284 (AT) (SN), 2018 WL 5993477, at *5 n.5 (S.D.N.Y. Nov. 15, 2018) ("Indeed, 'there is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court.'" (citations omitted)).

**A. Jurisdiction**

Respondents argue that the Court committed clear error by "incorrectly bypass[ing]" the Immigration and Nationality Act's ("INA") jurisdiction stripping provision, 8 U.S.C. § 1252(a)(2)(B)(ii), by invoking an exception to review procedural challenges. Resps.' Recon. Mem. at 4-6; *see* Order at 6. Respondents rest their argument upon a wholesale disagreement with

the Court's Order: that the Court incorrectly found procedural requirements exist beyond notice, with which Respondents assert they have complied. *See* Resps.' Recon. Mem. at 6-7.

Here, as they did in their initial opposition to the Petition, Respondents argue that the revocation of parole is unreviewable as a purely discretionary decision. *See id.*; ECF 9 at 9. In its Order, the Court rejected that argument because Petitioner challenged Respondents' "*procedure surrounding the substantive decision*" to revoke his parole. Order at 6 (citing *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015)). On that basis, the Court found it properly had jurisdiction to consider the question of *how* Respondents exercised their discretion—that is, whether the way Respondents acted accords with the Constitution and the laws of this country. *See You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) (holding that § 1252 did not strip the court of jurisdiction to review a habeas petition where the question before the court was the lawfulness of the manner of petitioner's order of removal and adjustment of status). Regardless of Respondents' disagreement as to what those laws require, the Court did not "bypass[]" the jurisdictional bar, *see* Resps.' Recon. Mem. at 4, but rather addressed a narrow issue within its jurisdiction under controlling precedent: a procedural challenge, *see Mantena*, 809 F.3d at 728. Because Respondents merely present the Court with arguments previously raised and do not cite to controlling law or overlooked facts, Respondents' motion for reconsideration with respect to the Court's jurisdiction to review the Petition is denied.

**B. Statutory and Regulatory Requirements**

Respondents argue that the Court's interpretation and application of the statutory and regulatory requirements was clear error. *See* Resps.' Recon. Mem. at 5-10. Respondents assert that 8 U.S.C. § 1182(d)(5)(A) does not require a case-by-case determination that the purposes of parole have been served. *Id.* at 5-7. The Court previously addressed and rejected this exact

4

argument, *see* Order at 10, and Respondents now seek a second bite at the apple, which is improper grounds for reconsideration.

Contrary to Respondents' contention, the Court did not "read into § 1182(d)(5)(A) a requirement," but rested its conclusion upon a reading of the statutory text in context. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) (In interpreting a provision's text, courts must look to the plain language in the context of the statutory scheme.). In the same sentence setting forth that the Secretary of Homeland Security may grant parole to an alien "only on a case-by-case for urgent humanitarian reasons or significant public benefit," the INA states that parole may be revoked when "in the opinion of the Secretary [such purposes] have been served." 8 U.S.C. § 1182(d)(5)(A). A natural reading of the sentence suggests that any opinion as to revocation of parole shall be made in the same manner as its grant: on a case-by-case basis and upon consideration of urgent humanitarian reasons and significant public benefit. No matter the strength of Respondents' vexation, "the parole authority is not unbounded" — the Department of Homeland Security ("DHS") may exercise its discretion in exercising that authority, but it must do so "within th[e] statutory framework" in a "reasonable and reasonably explained" manner. *Biden v. Texas*, 597 U.S. 785, 806 (2022).

Relatedly, Respondents argue that in reaching its conclusion, "the Court relied on distinguishable, incorrectly decided, and non-binding cases." Resps.' Recon. Mem. at 9-10. Respondents argue that the Court's reliance on *Doe v. Noem*, 778 F. Supp. 3d 311 (D. Mass. 2025), *Y-Z-L-H v. Bostock*, 25-CV-965 (SI) 2025 WL 1898025 (D. Or. July 9, 2025), and *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796 (LJV) (W.D.N.Y. July 16, 2025), warrants reconsideration because *Doe*, upon which *Y-Z-L-H* and *Mata Velasquez* partially relied, was first stayed by the Supreme Court, *see Noem v. Svitlana Doe*, 145 S. Ct. 1524 (2025), and then reversed by the First

Circuit, *Doe v. Noem*, 24-1384, 2025 WL 2630395 (1st Cir. Sept. 12, 2025). Resps.' Recon. Mem. at 9; Reply at 3.

As an initial matter, the Court found the reasoning in these cases to be "persua[sive]" as non-binding authority supporting its independent reasoning. Order at 8. Just as this Court was not bound by the cited cases of sister courts, it is also not bound by the First Circuit's intervening opinion in *Doe*. While Respondents disagree with the Court's Order, they do not point to any controlling authority warranting reconsideration at this time. *See, e.g., B&R Supermarket, Inc. v. Visa Inc.*, 17-CV-2738 (MKB), 2025 WL 510041, at *2 (E.D.N.Y. Feb. 14, 2025) ("Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts.") (quoting *Pentacon BV v. Vanderhaegen,* 23-CV-2172, 2024 WL 3835334, at *12 (S.D.N.Y. Aug. 15, 2024)); 18 Moore's Federal Practice - Civil § 134.02 (2025) ("The decisions of the court of appeals for one circuit are not binding upon the courts of appeal for other circuits").

Respondents also argue that the Court erred in its citation of DHS' Parole Directive. Resps.' Recon. Mem. at 10. The Court's reference to the Parole Directive was used, as in *Y-Z-L-H*, 2025 WL 1898025, at *13, as a guide for the meaning of "public benefit" under the applicable parole regulation, 8 C.F.R. § 212.5; *see id.* § 212.5(e)(2)(i). The explication that where a noncitizen "presents neither a flight risk nor a danger to the public, her detention 'is <u>not</u> in the public interest,'" *Y-Z-L-H*, 2025 WL 1898025, at *13, instructed the Court's understanding of the procedure required under 8 C.F.R. § 212.5(e)(2)(i).

For these reasons, Respondents' motion for reconsideration with respect to the Court's finding that Respondents failed to comply with the statutory and regulatory requirements is denied.

## C. Citation of 8 C.F.R. § 235.3(b)(6)

The Court grants Respondents' request for reconsideration to correct the erroneous citation to 8 C.F.R. § 235(b)(6) as applicable to the revocation of parole. That provision is applicable to the authority to initiate expedited removal of a non-citizen, not parole revocation.

The regulatory provision applicable to parole-termination is 8 C.F.R. § 212.5(e). Tracking the language of the applicable statute, 8 U.S.C. § 1182(d)(5)(A), the regulatory provision provides:

> upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5. The Court's holding rested on the words of the statute mirrored in the regulatory provision. Setting aside the improper citation to a distinct regulatory provision, the Court's reasoning remains firm: Respondents, in failing to make a determination that the purpose of Petitioner's parole had been accomplished, violated the statutory and regulatory provisions of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e). The Court did not "import procedural requirements from § 235.3(b)(6) into the distinct parole termination context" to "impose a procedural burden." *See* Resps.' Recon. Mem. at 8. Here, 8 C.F.R. § 212.5 outlines the process that DHS must follow when it revokes a particular person's parole, and no such process was provided to Petitioner. Respondents represented to the Court that, because petitioner no longer had parole status, ICE lawfully detained him pursuant to 8 U.S.C. § 1225(b)(2); however, by failing

to lawfully revoke that parole, Respondents lacked the authority to arrest Petitioner. As such, the revocation of Petitioner's parole was unlawful and his resulting detention invalid. Order at 10-12.

### D. Notice

Respondents further argue that the Court committed error by finding that Respondents "failed to provide credible, direct evidence demonstrating that Petitioner received notice." Resps.' Recon. Mem. at 8 (quoting Order at 11). Respondents argue they have provided sufficient proof of compliance with their view of the statutory and procedural notice requirement. *Id.*; *see* ECF 20.

Respondents' argument does not warrant reconsideration. The Court's Order did not rely upon Respondents' failure to present the actual documentation of the notice given to Petitioner. Respondents conceded that they had not conducted an individualized determination that "Petitioner [was] a flight risk or a danger to the public, or that an authorized official found that humanitarian reasons do not warrant Petitioner's presence in the United States." Order at 9. Respondents also did not assert that the notice to Petitioner contained any such explanation, as Respondents' most recent submissions now confirm. *See* ECF 20. The Court did not shift the burden of proof. It simply concluded that, notwithstanding Respondents' shifting representations,[2]

---

[2] Respondents first submitted a declaration by Michael Charles, sworn under penalty of perjury and predicated on review of DHS and ICE records *and personal knowledge*, stating that Petitioner's parole was automatically terminated pursuant to 8 C.F.R. § 212.5(e)(1) on April 19, 2025. ECF 9-1. Two days later, Respondents submitted a sworn declaration by Graham S. Dudley, based upon his review of Customs and Border Protection ("CBP") records, that directly contradicted Charles' previous representation: that Petitioner was sent an email on April 11, 2025, entitled "'Notice of Termination of Parole'" and "informing Petitioner that his parole would terminate seven days from the date of the notice." ECF 14. Following the Court's close of the record, Respondents submitted a third sworn declaration, again by Michael Charles, again stating that Petitioner was notified of parole termination on April 11, 2025. ECF 15-1. At no time prior to the Court's Order did Respondents submit a copy of the notice sent to Petitioner. The Court's discussion, Order at 11, discounting the credibility of Respondents' conflicting declarations was dicta, but there were, in fact, conflicting assertions made by Respondents. Courts may consider shifting accounts of the factual record that suggest error or misrepresentation as undermining a declarant's credibility. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (court may disregard facts that "are so contradictory that doubt is cast upon their plausibility"). Moreover, reliance on records without producing them falls short of the "best evidence" principle, which requires production of the underlying documents where available. *See Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126-27 (2d Cir. 2016) (citing FED. R. EVID. 1002). Respondents' submission, ECF 20, at this late time is not proper for the Court to address on reconsideration, particularly when the Court granted multiple adjournments to allow Respondents to gather the facts in support of its position and present them to the Court for consideration. *See Banister v. Davis*, 590 U.S. 504, 508 (2020) ("Courts will not address new arguments or

8

the statutory and regulatory procedure was not complied with. Accordingly, Respondents have presented the Court with no newly discovered facts that warrant reconsideration as to the adequacy of notice provided; and Respondents' motion is denied on this basis.

E.  **Petitioner's APA Claim**

Next, Respondents argue that the Court erred in failing to address their argument that Petitioners' APA claim is barred by the Supreme Court's holding in *Trump v. J.G.G.*, 604 U.S. 670 (2025). They claim that "a challenge to the legality of federal custody that results in a request for release from confinement lies exclusively in habeas corpus and APA relief is foreclosed." Resps.' Recon. Mem. at 11.

Respondents' reliance on *J.G.G.* is inapposite. There, "the [petitioners initially] sought relief in habeas among other causes of action, but they dismissed their habeas claims." *J.G.G.*, 604 U.S. at 671. Petitioners' remaining claims sought injunctive and declaratory relief from their removal from the United States under the Alien Enemies Act ("AEA"). *Id.* The Supreme Court acknowledged that petitioners were not expressly requesting release from confinement, but because their challenges "necessarily imply the invalidity of confinement and removal under the AEA," such claims "must be brought in habeas." *Id.* at 672.[3] By contrast, the Petitioner in this case directly challenged his detention and sought relief in habeas. *See generally* Pet. Therefore, he stated a viable action for a writ of habeas corpus, which "traditionally has been accepted as the specific instrument to obtain release from unlawful confinement." *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (cleaned up).

---

evidence (in a motion for reconsideration) that the moving party could have raised before the decision issued."). Moreover, this was not the ultimate basis for the Court's holding of inadequate notice.

[3] The case relied upon by *J.G.G.* in holding that the petitioners' challenges must be brought in habeas, *Heikkila v. Barber*, 345 U.S. 229 (1953), involved a challenge to a final order of deportation where judicial intervention was precluded under the applicable immigration statute.

Moreover, Respondents do not deny that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges" to detention. *See Zadvydas v. Davis,* 533 U.S. 678, 688 (2001). The federal habeas statute, 28 U.S.C. § 2241(c)(3), "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft,* 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). That includes an attack on the legality of custody based on violations of the APA. A claim under the APA challenging the procedures employed in detaining an individual may be reviewed in "any applicable form of legal action, including actions for . . . writs of . . . habeas corpus, in a court of competent jurisdiction." 5 U.S.C. § 703.

Accordingly, Respondents' motion that the Court reconsider their arguments with respect to Petitioner's claim under the APA is denied.

**F. Remedy**

Finally, Respondents argue that the Court "ordered an inapposite remedy by granting relief from detention." Resps.' Recon. Mem. at 12. The Respondents suggest that because "the purported agency error was procedural, not substantive, . . . the appropriate remedy is remand to the agency to correct that procedural error." Resps.' Recon. Mem. at 12.

Notably, Respondents took the opposite position when responding to the Petition. Respondents agreed that release from detention would result based on a finding in favor of Petitioner's constitutional or APA claims: "Even if Petitioner's APA claims had merit, which they do not, the result would be the same as that in habeas: release from detention." Resps.' Opp. to

Pet., ECF 9, at 11. This position, and Respondents' consequent failure to advance its current argument to the Court prior to the issuance of the Order, is reason to deny the motion for reconsideration. Prior to the instant motion for reconsiderations, Respondents did not argue that remand to the agency was necessary. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 159 (2d Cir. 2003) (Arguments raised for the first time on a motion for reconsideration are generally considered waived.).

"In the usual case, when an agency violates its obligations under the APA, we will vacate a judgment and remand to the agency to conduct further proceedings." *Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014). While Respondents point to *Guertin* for their position that the Court erred in ordering Petitioner be released from custody, they overlook a crucial component of that case's holding: that *vacatur* of the agency's action is proper. *See* 743 F.3d at 388; *accord* 5 U.S.C. § 706(2) (reviewing courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be -- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law[.]"). Here, the Court did just that: it vacated the agency's unlawful revocation of Petitioner's parole. By operation of law, the revocation is *void ab initio* (meaning the revocation never occurred); thus, release is the only possible way to effectuate that vacatur. Order at 12; *cf. Hewitt v. United States*, 145 S. Ct. 2165, 2174 (2025) ("By operation of legal fiction, the law acts as though the vacated [action] never occurred."); *id.* (under background vacatur principles, explaining that a vacated criminal sentence is to be treated going forward as though defendant was never sentenced).

11

Moreover, judicial review of agency action is "vested in a court with equity powers, and while the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action." *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939). As noted above, the APA properly contemplates habeas corpus relief. *See* 5 U.S.C. § 703. Indeed, other district courts have seen fit, as did this Court, to order release of a petitioner from detention upon the agency's failure to comply with statutory or regulatory procedure. *See, e.g., Calderon v. Sessions*, 330 F. Supp. 3d 944, 959 (S.D.N.Y. 2018) (granting petition for writ of habeas corpus because "Respondents have violated the APA and the Due Process Clause of the Fifth Amendment"), *appeal withdrawn*, 18-2926, 2018 WL 6920377 (2d Cir. Oct. 5, 2018); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017) (ordering release of petitioner where ICE failed to follow its own regulations and procedures); *Y-Z-L-H*, 2025 WL 189025, at *13.

Accordingly, Respondents' motion for reconsideration on the ground that the Court ordered an inapposite remedy is denied.

**G. Petitioner's Liberty Interest**

Finally, Respondents take issue with what they characterize as the Court's "incorrect[] f[inding] of a protected liberty interest[.]" Resps.' Recon. Mem. at 11. Respondents reiterate their position that no process was owed to Petitioner as he "'has no constitutional rights regarding his application' beyond the procedures authorized by Congress." *Id.* at 12 (quoting *Landon v. Plascencia*, 459 U.S. 21, 32 (1982)).

Respondents are mistaken in that the Court did not reach the question of Petitioner's Fifth Amendment rights. *Jean v. Nelson,* 472 U.S. 846, 857 (1985) ("The fact that the protection results from the terms of a regulation or statute, rather than from a constitutional holding is a necessary

consequence of the obligation of all federal courts to avoid constitutional adjudication except where necessary."). Rather, the Court considered only the process owed to him under the statutory and regulatory structure: whether Petitioner was afforded the procedures required to lawfully revoke his parole.

For these reasons, Respondents' motion for reconsideration as to Petitioner's liberty interest is denied.

## CONCLUSION

For the foregoing reasons, Respondents' motion for reconsideration is granted in part and denied in part. Respondents' motion is granted for the limited purpose of correcting the regulatory citation, *see* Order at 11-12, and denied in all other respects.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

October 3, 2025
Brooklyn, New York